IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. |
| BERNADETTE MONROE, | ) ) ) | |
| Defendant. | ) ) | |

**PLEA AGREEMENT AND STIPULATION OF FACTS**

Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States of America, by Jan Paul Miller, United States Attorney for the Central District of Illinois, Patrick D. Hansen, Assistant United States Attorney, and Bradley K. Hart, Special Assistant U.S. Attorney, and the defendant, Bernadette Monroe, personally and by the defendant's attorney, Bruce Locher, hereby enter into this plea agreement.

1.  This document contains the complete and only plea agreement between the United States Attorney for the Central District of Illinois and the defendant. This agreement supersedes and replaces any and all prior formal and informal, written and oral, express and implied, plea agreements between the parties. No other agreement, understanding, promise, or condition between the United States Attorney for the Central District of Illinois and the defendant exists, except as set forth in this plea agreement.

2.  This plea agreement is binding only upon the United States Attorney for the Central District of Illinois and the defendant. It does not bind any United States Attorney outside

1

the Central District of Illinois, nor does it bind any state or local prosecutor. In addition, the plea agreement does not bind the Tax Division of the United States Department of Justice or the Internal Revenue Service of the United States Department of the Treasury.

3. This agreement is made pursuant to Federal Rule of Criminal Procedure 11(c). If the Court does not accept the recommendations of the parties, the defendant does not have the right to withdraw her plea of guilty.

## CHARGE(S), ELEMENTS, AND PENALTIES

4. The defendant will plead guilty to the Information in which the defendant is charged with mail fraud in violation of Title 18, United States Code, Section 1341.

5. The defendant has read the charge to which the defendant is pleading guilty, and this charges have been explained to the defendant by the defendant's attorney. Furthermore, the defendant fully understands the nature and elements of the crimes to which the defendant is pleading guilty. To sustain the charge of mail fraud, the United States must prove the following propositions beyond a reasonable doubt:

   a. First, that the defendant knowingly engaged or assisted in the scheme to defraud as described in the Information;

   b. Second, that for the purpose of carrying out the scheme, the defendant used the United States mail or caused the United States mail to be used in the manner charged in the particular count;

   c. Third, that the defendant used a material falsehood in the scheme to defraud; and

   d. Fourth, that the defendant did so knowingly and with the intent to defraud.

6. The defendant understands and agrees that the offense to which the defendant shall plead guilty carries the following potential penalties:

- up to 20 years in prison;
- up to a $250,000 fine;
- up to 3 years of supervised release; and
- a $100 mandatory special assessment.

7. The defendant further understands that upon violation of any of the terms of the defendant's supervised release, the supervised release may be revoked and the defendant may be imprisoned for all or part of the supervised release period without credit for time previously served.

8. The defendant understands and agrees that the Court may be required to order the defendant to pay restitution. The parties agree that the amount of restitution for the charges in the information total $33,340, and the defendant understands and agrees that restitution may be ordered for all of her related activities, not just those noted in the counts of conviction. Restitution may include the cost of incarceration and supervision. The parties acknowledge that the Court may order restitution in whatever amount it deems proper.

## STATUTORY AND GUIDELINE WAIVERS

### Waiver of Right of Appeal from Conviction and Sentence

9. The defendant is aware that federal law, specifically, Title 28, United States Code, Section 1291, affords a defendant a right to appeal a final decision of the district court and that federal law, specifically, Title 18, United States Code, Section 3742, affords a defendant a right to appeal the conviction and/or sentence imposed. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives the right to appeal any and all issues relating to this plea agreement and

3

conviction and to the sentence, including any fine or restitution, within the maximum provided in the statutes of conviction, and the manner in which the sentence, including any fine or restitution, was determined, on any ground whatever, in exchange for the concessions made by the United States in this plea agreement, unless otherwise stated in this paragraph. The defendant retains the right to appeal should the Court depart upward from the sentencing guidelines.

### Waiver of Right to Collateral Attack

10.    The defendant also understands that he has a right to attack the conviction and/or sentence imposed collaterally on the grounds that it was imposed in violation of the Constitution or laws of the United States; that the defendant received ineffective assistance from her attorney; that the Court was without proper jurisdiction; or that the conviction and/or sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and the defendant's attorney have reviewed Section 2255, and the defendant understands her rights under the statute. Understanding those rights, and having thoroughly discussed those rights with the defendant's attorney, the defendant knowingly and voluntarily waives her right to collaterally attack the conviction and/or sentence. The defendant's attorney has fully discussed and explained the defendant's right to attack the conviction and/or sentence collaterally with the defendant. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice the defendant's attorney may have given the defendant, in exchange for the concessions made by the United States in this

plea agreement, the defendant hereby knowingly and voluntarily waives her right to collaterally attack the conviction and/or sentence. The rights waived by the defendant include her right to challenge the amount of any fine or restitution, in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255.

## SENTENCING WAIVER

11.    The defendant understands that she may have a right to require the United States to prove to a jury beyond a reasonable doubt certain sentencing factors, adjustments and departures under the United States Sentencing Guidelines. The defendant expressly waives any right she may have to a jury determination of any sentencing factors, adjustments and departures, upward or downward, under the Sentencing Guidelines. The defendant hereby consents to the District Court determining each and every sentencing factor, adjustment and departure, upward or downward, under the Sentencing Guidelines (unless they are found unconstitutional by the U.S. Supreme Court) at her sentencing hearing.

## DEPARTURES

12.    The defendant understands that there is no agreement as to the defendant's criminal history or criminal history category, and that the defendant's criminal history could alter the defendant's offense level if, for example, the defendant is a career offender or if the instant offense was a part of a pattern of criminal conduct from which the defendant derived a substantial portion of the defendant's income. Since the defendant's criminal history cannot be determined prior to the completion of the pre-sentence investigation, the United States and the defendant reserve the right to argue at sentencing for, or oppose, an upward or downward departure for over-representation or under-representation of criminal history pursuant to United States Sentencing Guideline Section

4A1.3.

13. The defendant and the defendant's attorney acknowledge that they have reviewed, and the defendant understands, the possible application of United States Sentencing Guidelines Section 5H1.1 through Section 5H1.12, Section 5K2.0 through Section 5K2.21, and other grounds for downward departure from the applicable Sentencing Guideline range. The defendant acknowledges that she has fully discussed any potential basis for downward departure with the defendant's attorney. The defendant agrees that no other departures will be raised by the defendant at sentencing other than the specific departures mentioned in this agreement, except the defendant may raise any departure based upon facts that occur after the date the plea agreement is signed by the defendant.

## **DEFENDANT'S OBLIGATIONS**

14. As a condition of this entire plea agreement, the defendant will cooperate fully with law enforcement officials. This cooperation includes providing truthful information and truthful testimony if called upon to testify. All information and testimony given by the defendant must at all times be complete and truthful. This means, for instance, that she must neither minimize her own actions nor fabricate or exaggerate anyone else's actions or involvement. The defendant's status does not hinge upon obtaining a conviction against anyone else; it is dependent solely upon her being truthful about the facts, whatever those facts may be.

15. The defendant and her attorney acknowledge that they have reviewed, and the defendant understands, the possible application of United States Sentencing Guidelines Section 5K.1.1. They further acknowledge, consistent with Application Note 3 to that Section, that the United States is in the best position to assess the value of the defendant's cooperation to the United States and its law enforcement efforts. In return for receiving the opportunity to

cooperate with the government and for the opportunity to be considered by the government for a motion and recommendation for a downward departure pursuant to Section 5K1.1, the defendant and her attorney agree to limit any argument regarding the extent of a downward departure for substantial assistance to the government only those grounds specifically set forth in Section 5K1.1.

16. The defendant further understands and agrees to pay the mandatory $100 Special Assessment for each count of the Information to which the defendant is entering a plea of guilty as required under Title 18, United States Code, Section 3013, for a total of $100. The defendant agrees to pay this mandatory special assessment at the time of sentencing by delivering a check or money order made payable to the United States District Court and understands that she will be required to do so as a condition of this plea agreement. The failure to comply with this requirement, however, will not constitute grounds for the defendant to withdraw any plea of guilty.

17. The defendant agrees to prepare a complete and truthful financial statement under oath, on a form provided by the United States Attorney's Office, and to return the statement to the United States Attorney's Office within two weeks of submitting this signed plea agreement. This statement will be used by the Financial Litigation Unit of the United States Attorney's Office to enforce the Court's sentence in this case, including the collection of any fines and restitution.

## THE UNITED STATES ATTORNEY'S OBLIGATIONS

18. At the time of sentencing the United States agrees to recommend a sentence at the low end of the Sentencing Guideline range.

19.  The United States Attorney for the Central District of Illinois agrees to bring no additional criminal charges in the Central District of Illinois against the defendant relating to or arising from the offenses charged in this Information, except for any crime of violence and any crime unknown to the United States Attorney for the Central District of Illinois prior to the time this plea agreement is signed by the parties.

## AGREEMENTS AS TO SENTENCING GUIDELINES

20.  The defendant agrees and understands that the Court is required to consider any applicable Sentencing Guidelines in determining the defendant's sentence and that the Court may, in some circumstances, depart upward or downward from the Sentencing Guideline range.

21.  Based on the information currently available, the defendant and the United States agree on the following points regarding the application of the Sentencing Guidelines to the offense charged in the Information:

    a.  The parties agree, based upon facts currently known by the United States, that the defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the defendant's criminal conduct in accordance with Section 3E1.1 of the Sentencing Guidelines and, therefore, a two-level reduction in the offense level is appropriate. Acceptance of personal responsibility shall include cooperating fully with the United States Probation Office in the preparation of a pre-sentence report and not committing any bond violations while on pretrial release, including but not limited to the commission of any local, state or federal offenses. This agreement does not preclude the United States from changing its position if new evidence to the contrary is discovered or if the defendant later demonstrates a lack of acceptance of personal responsibility for the defendant's criminal conduct.

b.  The parties agree that the specific offense characteristic in Guideline Section 2B1.1(b) applies, and the government and the defendant agree that the loss amount relevant to the charged conduct is $33,340.

c.  Based on these calculations, it is predicted that the defendant's offense level will be calculated as follows:

| | | |
|---|---|---|
| Base Level: | 2B1.1(a) | 6 |
| Loss - $33,340 | 2B1.1(b)(1)(D) | + 6 |
| Adjusted Level | | 12 |
| Acceptance of Responsibility 3E1.1 | | -2 |
| Final Offense level | | 10 |

22.  The parties agree that there are no other adjustments in Chapter Two of the Sentencing Guidelines that apply to the defendant in this case.

23.  The parties agree that there are no other adjustments in Chapter Three of the Sentencing Guidelines that apply to the defendant in this case.

24.  The defendant and the United States agree that the above statements regarding Sentencing Guidelines are not binding on the Court, and relate only to the positions the parties take regarding the applicable sentencing guideline range based upon the information of which they are currently aware.  The Court will remain free to make its own independent determination of the applicable guideline range and to impose whatever sentence it deems appropriate.

25.  The defendant agrees that at the time of sentencing, the Court will not be bound by any recommendation made by any party, and that the Court will be free to impose whatever sentence it deems appropriate up to the statutory maximum, subject to the limitations of the United States Sentencing Guidelines.  The defendant agrees and understands that the defendant

will not be allowed to withdraw the defendant's guilty plea because of an objection to the calculation of the Sentencing Guidelines or to the Court's sentencing findings or rulings or because the defendant receives a sentence higher that that recommended under the plea agreement.

## FACTUAL BASIS

26.     The defendant will plead guilty because the defendant is in fact guilty of the charge contained in Count 1 of the Information. In pleading guilty to the charge, the defendant stipulates to and admits to the following facts:

Starting in or about 1996, Pamela Houston was employed by a company which contracted with the Illinois Department of Human Services, Office of Rehabilitation Services (ORS). Part of Houston's duties were to accurately enter the number of hours a personal assistant (PA) worked to provide services to their client during a period of time. The hours would then be transmitted to the Office of the Comptroller for the State of Illinois, and a check or warrant would be issued to the PA for the number of hours worked times the hourly wage, less deductions. Starting in approximately 1999, and continuing until 2003, Houston devised a scheme to defraud by creating computer entries identifying a personal friend or relative as working certain hours as a PA that were not actually worked. Houston and the others would then split the money. In furtherance of this scheme, Bernadette Monroe started receiving checks or warrants from the State of Illinois in 1999 and continued receiving them until 2003.

Specifically as to the information, on or about June 12, 2003, Pamela Houston made a computer entry at the ORS office that caused the State of Illinois, Office of the Comptroller, in Springfield, Illinois to issue State Warrant #SH6216730 dated June 27, 2003 to Bernadette

Monroe. The gross amount of the check was $784.00 with a net amount of $613.64. The check was sent through the U.S. Mail to Monroe in Alton, Illinois 62207. Monroe subsequently endorsed the check and cashed it at the US Bank on or about June 30, 2003. This check was issued to Bernadette Monroe for PA services that were allegedly rendered to Kevin Boston for the periods ending April 30, 2003 ($350) and May 31, 2003 ($434), but were never provided.

Bernadette Monroe was interviewed on or about February 18, 2004 by Illinois State Police Investigators. Monroe stated that Pamela Houston offered to help her when Monroe began having financial difficulties. Houston told Monroe she would pay Monroe for extra hours from the Home Services Program which were not used by clients. Monroe understood that Houston then used Monroe's Social Security number to enter additional hours. Monroe began to receive checks between $500 and $900. Houston received half of the funds from the checks Monroe cashed. The checks came every two weeks and on some occasions once a month. According to Monroe, she was aware that others asked Houston to include them in the scheme. In August 2003, Houston told Monroe that Houston had been caught and that no more money would be received. The total amount of fraudulent checks received and cashed by Monroe is $33,340.

## EFFECT OF VIOLATION OF AGREEMENT

27. The defendant further agrees that if the defendant violates the terms of this plea agreement the United States has the option to declare the plea agreement null and void. In the event the United States exercises its option to declare the plea agreement null and void, the United States will be completely released from all of its obligations under this plea agreement and the United States will be free to seek to vacate the defendant's conviction and sentence, and

to reinstate any previously dismissed charges against the defendant or to seek the defendant's resentencing. However, in the event the United States exercises its option to declare the plea agreement null and void, the defendant will not be allowed to withdraw from any previously accepted guilty plea. The defendant also agrees to waive any and all double jeopardy rights, and the applicable statute of limitations should the United States seek to reinstate any charges against the defendant or seek to have the defendant resentenced.

28. Whether or not the defendant has violated the terms of the plea agreement shall be determined by the Court. The burden of proof shall rest with the United States to establish by a preponderance of the evidence that the defendant violated the terms of the plea agreement.

## WAIVER OF CONSTITUTIONAL RIGHTS

29. The defendant understands that by pleading guilty the defendant surrenders the following rights among others:

a. The right to plead not guilty or persist in a plea of not guilty if already made. If the defendant persisted in a plea of not guilty to the charges the defendant would have the right to a public and speedy trial.

b. The right to a trial by jury. The trial could be either a jury trial or a trial by the judge sitting without the jury. The defendant has an absolute right to a jury trial. If the trial is a jury trial, the jury would be composed of twelve persons selected at random. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that the defendant is presumed innocent, and that it could not convict the defendant unless, after hearing all the evidence, it was persuaded that the United States had met its burden of proving the defendant's guilt beyond a reasonable doubt.

  c.  The right to the assistance of counsel. The defendant has the right to be represented by an attorney at every stage of the proceedings and, if the court finds the defendant is unable to afford an attorney, one will be appointed to represent the defendant at no cost to the defendant.

  d.  The right to confront and cross-examine adverse witnesses. At a trial, the United States would be required to present its witnesses and other evidence against the defendant. The defendant would be able to see and hear those government witnesses and the defendant's attorney would be able to cross-examine them. In turn, the defendant's counsel could present witnesses and other evidence on the defendant's behalf. If the witnesses for the defendant refused to appear voluntarily, their attendance could be required through the subpoena power of the court.

  e.  The right against compelled self-incrimination. At a trial, the defendant would have a privilege against self-incrimination so that the defendant could decline to testify, and no inference of guilt could be drawn from the defendant's refusal to testify. If the defendant desired to do so, the defendant could testify on the defendant's own behalf.

30. The defendant understands that by pleading guilty the defendant is waiving all the rights set forth in the prior paragraphs. The defendant's attorney has explained those rights to the defendant and the consequences of the waiver of those rights.

**AGREED:**

**Defendant's Attorney:**

31. I have discussed this plea agreement fully with my client, and I am satisfied that my client fully understands its contents and terms. No threats, promises, or representations have

been made, nor agreements reached, express or implied, to induce my client to plead guilty other than those stated in this Plea Agreement. I have reviewed with my client United States Sentencing Guidelines Sections 1B1.3 and 1B1.4 (relevant conduct).

    Dated: 11/2/04         s/Bruce Locher
                                   Bruce Locher
                                   Attorney for Bernadette Monroe

**Defendant:**

32.    I have read this entire Plea Agreement carefully and have discussed it fully with my attorney. I fully understand this Agreement, and I agree to it voluntarily and of my own free will. I am pleading guilty because I am in fact guilty, and I agree that the facts stated in this Agreement about my criminal conduct are true. No threats, promises, or commitments have been made to me or to anyone else, and no agreements have been reached, expressed or implied, to influence me to plead guilty other than those stated in this Plea Agreement. I am satisfied with the legal services provided by my attorney. I understand that by signing below I am stating I agree with everything stated in this paragraph, and I am accepting and entering into this Plea Agreement.

    Dated: 11/2/04        s/Bernadette Monroe
                                   Bernadette Monroe
                                   Defendant

**United States:**

33.     On behalf of the United States of America, I accept and agree to this Plea Agreement.


Dated:     11/4/04

                                                       JAN PAUL MILLER
UNITED STATES ATTORNEY

s/Patrick D. Hansen
Patrick D. Hansen
Assistant United States Attorney


s/Bradley K. Hart
Bradley K. Hart
Special Assistant United States Attorney